CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 11 2017

JULIA C. DUDLEY, CLERK
BY: [signature]
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **DOLLY Y. PARKS,**<br>**Plaintiff,** | ) | **Civil Action No. 7:16-cv-00450** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **HAROLD CLARKE, et al.,**<br>**Defendants.** | ) | **By: Hon. Michael F. Urbanski**<br>**Chief United States District Judge** |

Dolly Y. Parks, a Virginia inmate proceeding with counsel, commenced this action pro se pursuant to 42 U.S.C. § 1983. The remaining defendants are current and former officials of the Fluvanna Correctional Center for Women. Plaintiff complains that a disciplinary penalty was imposed in violation of due process guaranteed by the Fourteenth Amendment. Defendants filed a motion for summary judgment, and Plaintiff responded, making the matter ripe for disposition. After reviewing the record, the court grants Defendants' motion for summary judgment because Plaintiff fails to establish the violation of a constitutional right.

**I.**

On June 19, 2015, Plaintiff received an institutional charge for code 201, "Disobeying an Order." Correctional Officer ("C/O") Foster reported that she saw napkins on top of the light fixture inside Plaintiff's cell and "have asked both [inmates] that reside in this cell to keep any items from on top of their lights. . . . [because] [i]]t is a fire hazard."

The next day, Plaintiff received a copy of the charge and chose the procedures and discovery she wanted. Plaintiff refused a penalty offer, declined a staff advisor, and waived a twenty-four hour preparation time. However, she wanted to be present during the hearing, to have one inmate and one staff testify on her behalf, and to submit nine cross-examination

questions to C/O Foster.[1] Plaintiff proffered that her cellmate would testify that C/O Foster had "never opened the cell 204 the night she was the flood officer in D-wing." Plaintiff proffered that the staff would testify about the same and that C/O Foster never spoke to Plaintiff "while doing . . . rounds in D-wing." In response to the questions, C/O Foster explained in pertinent part that she first instructed the cell occupants to remove the napkins during count on June 18 and that she believed she was in the control room "on June 18 when Ramadan was called out." C/O Foster also explained that she and other officers are supposed to look in a cell during count to address "anything . . . out of place."

Defendant Marie Jones was assigned as the Institutional Hearing Officer ("IHO") and conducted the disciplinary hearing on June 25. Jones denied the two witness requests and excluded five of the nine written questions as irrelevant. Jones considered Plaintiff's testimony and reviewed C/O Foster's answers to the written questions before deeming Plaintiff guilty and recommending a $12.00 fine. Defendant Sylvia Wilson, a Unit Manager, approved the disposition and imposed the $12.00 fine.

Plaintiff's administrative appeal of the conviction was unsuccessful. Plaintiff argued in pertinent part that the confidential building log book indicated that C/O Foster was in the control room during count on June 18.[2] On August 24, defendant Tammy Brown, who was the Warden at the time, upheld the institutional conviction and fine on appeal. Brown noted, inter alia:

> You claim you have information specific to the charge that you did not have at the time of the hearing. . . . [A]ny information you may have obtained

[1] Disobeying an Order is considered a category II offense. Per policy, the reporting officer does not need to personally appear at a disciplinary hearing for a category II offense.

[2] After Plaintiff filed the appeal, Wilson allegedly chastised Plaintiff for contacting Internal Affairs and threatened to take away her prison job unless she revealed the name of the correctional officer who allowed her to view the confidential log book. Plaintiff refused to name the officer, and Wilson allegedly was dismissive of Plaintiff's verbal complaints about the disciplinary conviction.

> after the completion of the disciplinary hearing will not be entertained, as the decision of the Hearings Officer was made based on the evidence presented at the time of the hearing. Also, the information you are presenting is not information that offenders have ready access to and is contradictory to your recorded testimony.

This lawsuit followed, wherein Plaintiff believes Defendants failed to ensure the process guaranteed by the Fourteenth Amendment. First, Plaintiff contends that the log book establishes that C/O Foster was in the control room and not around her cell when the offense occurred. Second, Plaintiff disputes Jones' evidentiary rulings to exclude the witnesses and five questions as irrelevant. Third, Plaintiff challenges the sufficiency of the evidence supporting the conviction. Fourth, Plaintiff complains that the conviction impacted her Earned Sentence Credit ("ESC") classification calculation more than eight months later during a routine classification decision.[3] Plaintiff seeks damages and declaratory and equitable relief.

**II.**

Defendants filed a motion for summary judgment arguing qualified immunity. A party is entitled to summary judgment if the pleadings, the disclosed materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is

[3] The ESC system applies to certain inmates who, like Plaintiff, were sentenced for an offense committed on or after January 1, 1995. Inmates subject to the ESC system may be able to reduce the length of their sentences. Va. Code §§ 53.1-202.2 – 53.1-202.4. An eligible inmate is assigned to one of four levels with rates ranging from zero to four and one-half days' credit for every thirty days of confinement. In May 2016, Plaintiff's earning rage decreased from four and one-half days' credit to three days' credit.

an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-24. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A plaintiff cannot use a response to a motion for summary judgment to amend or correct a complaint challenged by the motion for summary judgment. Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009).

A government official sued under § 1983 is entitled to invoke qualified immunity, which is an immunity from suit and pretrial burdens like discovery.[4] Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The doctrine of qualified immunity 'balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)).

The "qualified immunity analysis typically involves two inquiries: (1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." Raub v. Campbell, 785 F.3d 876, 881 (4th Cir. 2015). A "court may address these two questions in the order . . . that will best

[4] Plaintiff passingly states in response to the motion for summary judgment that the motion should be denied as premature because the parties have not yet conducted discovery. A motion for summary judgment may be filed at any time, and Plaintiff fails to show that she cannot present facts essential to justify opposition. Fed. R. Civ. P. 56(b), (d). Also, courts should resolve qualified immunity at the earliest opportunity so defendants do not lose the benefit of the immunity by responding to discovery. See, e.g., Hunter v. Bryant, 502 U.S. 224, 227 (1991).

facilitate the fair and efficient disposition of each case." Estate of Armstrong v. Vill. of Pinehurst, 810 F.3d 892, 898 (4th Cir. 2016) (internal quotation marks omitted). A plaintiff's claim "survives summary judgment, however, only if [the court] answer[s] both questions in the affirmative." Id.

**III.**

Defendants are entitled to qualified immunity and summary judgment because Plaintiff fails to establish the violation of a constitutional right. To state a due process claim, an inmate must show that she was deprived of "life, liberty, or property" by governmental action. See, e.g., Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). When a disciplinary penalty does not involve the revocation of accrued sentencing credit, protected interests are generally limited to freedom from restraint that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. See, e.g., Sandin v. Conner, 515 U.S. 472, 484 (1995) (holding that disciplinary segregation did not present the type of atypical, significant deprivation in which a state might create a liberty interest).

Plaintiff does not demonstrate that the $12.00 fine placed any atypical and significant hardship on her in relation to the ordinary incidents of prison life. See Bratcher v. Mathena, No. 7:15CV00500, 2016 U.S. Dist. LEXIS 105306, at *3-4, 2016 WL 4250500, at *1 (W.D. Va. Aug. 10, 2016) (finding a $12.00 fine did not pose an atypical and significant hardship in comparison to the ordinary incidents of prison life); Henderson v. Virginia, No. 7:07-CV-266, 2008 U.S. Dist. LEXIS 5230, at *33-36, 2008 WL 204480, at *10 (W.D. Va. Jan. 23, 2008) (same), aff'd, 272 F. App'x 264 (4th Cir. 2008) (per curiam). Even if Plaintiff's conviction ultimately changed her ESC custody status or future ESC earning rate eight months later, that

change does not implicate federal due process protections. See Johnson v. Johnson, No. 7:09cv00207, 2009 U.S. Dist. LEXIS 64330, at *7-11, 2009 WL 2337994, at *2-4 (W.D. Va. July 27, 2009) (holding that neither Virginia statutes nor VDOC policies create a liberty interest for ESC), aff'd, 353 F. App'x 827 (4th Cir. 2009) (per curiam). The statutory scheme for earning ESC is conditional and at the discretion of prison officials. See Va. Code §§ 53.1-202.3, 53.1-202.4. Inmates do not have a protected liberty interest in earning a specific rate of good conduct time. See DeBlasio v. Johnson, 128 F. Supp. 2d 315, 329 (E.D. Va. 2000), aff'd, 13 F. App'x 96 (4th Cir. 2001) (per curiam). The effect of a classification reduction on the ability to earn ESC is too speculative to constitute a deprivation of a protected liberty interest. See Luken v. Scott, 71 F.3d 192, 193-94 (5th Cir. 1995) (citing Meachum v. Fano, 427 U.S. 215, 229 n.8 (1976)). Moreover, a claim that prison officials have not followed their own independent policies or procedures does not state a constitutional claim. See, e.g., Sandin, 515 U.S. at 483; United States v. Caceres, 440 U.S. 741, 752-55 (1979); Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990).

Because Plaintiff did not have a federally protected interest in avoiding the imposition of the monetary fine, she was not entitled to federal due process protections.[5] Accordingly,

[5] Nonetheless, the record shows that Plaintiff received advance notice of the proceedings, gave testimony, and received a written report describing the bases for the conviction and penalty. See, e.g., Wolff v. McDonnell, 418 U.S. 539, 564-71 (1974). Jones, as the IHO, was allowed to disregard cumulative and irrelevant evidence, as was the case here. See, e.g., Brown v. Braxton, 373 F.3d 501, 505 (4th Cir. 2004); Ward v. Johnson, 690 F.2d 1098, 1112-13 (4th Cir. 1982); see also Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 126 (1977) ("Because the realities of running a penal institution are complex and difficult, we have also recognized the wide-ranging deference to be accorded the decisions of prison administrators."); Wolff, 418 U.S. at 566-67 ("[Prison officials] must have the necessary discretion [to limit the calling of witnesses] without being subject to unduly crippling constitutional impediments."). Moreover, there was "some evidence" in the record – C/O Foster's charging document – to support the conviction for Disobeying an Order against Plaintiff, who was assigned to the cell and would have been in the cell during count. See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985) (recognizing a federal court will not review accuracy of finding as long as "some evidence" in the record supports the factual findings). Also, Jones' decision received two levels of review.

Defendants are entitled to qualified immunity and summary judgment because Plaintiff fails to establish the violation of a constitutional right.

## IV.

For the foregoing reasons, the court grants Defendants' motion for summary judgment.

**ENTER**: This 9th day of December, 2017.

Chief United States District Judge